IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VALENTINA MAKER | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-4120 |
| | : | |
| TEMPLE UNIVERSITY | : | |
| | : | |

**MCHUGH, J.**                                                                                           December 7, 2021

**MEMORANDUM**

This case arises out of Plaintiff Valentina Maker's discharge from Defendant Temple University's Doctorate Program in Physical Therapy during the height of the COVID-19 pandemic. Plaintiff alleges that the University illegally discharged her from the doctorate program during the middle of her clinical practicum, without adequately evaluating her performance or conducting a hearing regarding her dismissal. Against that background, Plaintiff brings both due process[1] and promissory estoppel claims. The University has moved to partially dismiss Plaintiff's Complaint as to her promissory estoppel claim.[2] Although the Complaint is lacking in some respects, as this early stage I cannot conclude that dismissal is warranted.

I.   **Factual Allegations**

Plaintiff alleges the following. Valentina Maker was a graduate student in Temple University's Doctor of Physical Therapy program. Compl. ¶¶1-3. After spending more than two

---

[1] The Defendant has not moved to dismiss Plaintiff's due process claim, and as such, I do not consider it.

[2] Defendant asks that to the extent I determine that Plaintiff has raised a contract claim, it be dismissed. I do not consider Plaintiff to have pleaded a contract claim. In her complaint, Plaintiff brings due process and promissory estoppel claims, Compl. ¶¶5, 9-10, 18, 29, ECF 1, but does not expressly allege that Temple violated a contract. Although Plaintiff's complaint specifies that she is incorporating Exhibit A, a letter from counsel to the Temple University President, which makes reference to a possible contract, she did not specifically plead a contract violation. Compl. *Id.* ¶5, Compl. Exhibit A at 1.

years in Temple's doctoral program, she was terminated from the program during her clinical practicum, which took place at Temple University Hospital. *Id.* ¶¶11-12, 28-29. The clinical practicum, which was typically a 12-week program, had been shortened to five weeks because of the ongoing COVID-19 pandemic. *Id.* ¶28.[3] As a result of the pandemic, Ms. Maker alleges that she was frequently left unsupervised in the practicum because her clinical instructor had an additional workload of patients. *Id.* ¶24. When she did receive instruction, she struggled to absorb it because both she and her clinical instructor wore protective gear, including a face shield, face mask, and gown. *Id.* ¶11. According to Ms. Maker, wearing protective gear also made it challenging to interact with and care for clients. *Id.*

In Summer 2020, Defendant dismissed Ms. Maker from the Doctoral program. Compl. Exhibit A at 1. Defendant claims to have done so because of an issue related to "patient safety" during the practicum. *Id.* ¶15. Plaintiff alleges that "patient safety" was used as pretext for her dismissal, as evidenced by the fact that no patient was injured and there were no patient complaints about her during the practicum. *Id.* ¶¶11, 15. She also alleges that she was discharged despite performing satisfactorily on her written evaluation which took place during the middle of the practicum, *Id.* ¶14, and before she could receive a complete evaluation, which,

---

[3] Plaintiff's complaint is not clear as to whether Ms. Maker was dismissed during the middle of her practicum, or alternatively, whether she was dismissed after she completed the five-week practicum, which had been shortened because of the COVID-19 pandemic. For instance, Plaintiff alleges, "As a pretext, plaintiff was dismissed, after spending in excess of $100,000 in tuition and over two years in the program, before her practicum was finished." Compl. ¶12. Later, Plaintiff alleges, "Plaintiff's clinical practicum was supposed to be for 12 weeks and was abridged to 5 weeks due to the COVID-19 pandemic…Defendant violated plaintiff's due process rights by terminating her at 5 weeks during her practicum, since there was no opportunity to judge plaintiff's performance on the full length of her course." *Id.* ¶¶28-29.

according to the Clinical Education Student Handbook, takes place at the end of a student's 12-week clinical practicum.[4]  *Id.* ¶¶29-30, 33, Compl. Exhibit B, ¶10(c).

The Plaintiff contends that she did not receive adequate evaluation in the period leading up to her dismissal. Specifically, she claims that she was not evaluated by her advisor at Temple University's Hospital. Instead, her performance evaluation was improperly delegated to physical therapist Patricia Garcia, who was not a faculty member of the Temple Physical Therapy Program and who did not have appropriate credentials. Compl. ¶13, 22. Further, Plaintiff alleges that she did not receive written tests to evaluate her skills, *Id.* ¶13, and Temple did not consider her self-evaluations.[5] *Id.* ¶22. Moreover, Plaintiff asserts that when she was evaluated, Temple failed to consider the impact of the COVID-19 pandemic on her performance. *Id.* ¶24.

By the time that Ms. Maker was terminated from Temple University's doctoral program, she had spent approximately $100,000 in tuition. *Id.* ¶4. Plaintiff did not receive written notice that she would be terminated. *Id.* ¶31. She was discharged without receiving a hearing or the opportunity to obtain counsel or present evidence on her behalf. *Id.* ¶32.

## II.     Legal Standard

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

---

[4] According to the handbook, the evaluation is conducted by "the Director of Clinical Education and the Center Coordinator of Clinical Education [who] evaluate the affiliation and consider suggestions for improvement." Compl. Exhibit B, ¶10(c).

[5] The handbook notes that "[s]tudents' opinions are an important part of [] the evaluation process" and before the clinical experience ends, "[s]tudents are responsible for filling out…[an] evaluation." Compl. Exhibit B, ¶10(c).

**III.   Discussion**

    **1. Plaintiff's Promissory Estoppel Claim Survives the Motion to Dismiss**

Plaintiff brings a promissory estoppel claim. Ms. Maker alleges that she was discharged "in violation of the doctrine of promissory estoppel in that plaintiff relied on promises of her supervisor and clinical director at Temple …to fairly evaluate her academic performance …to her detriment." Comp. ¶5, 18.

The doctrine of promissory estoppel may be invoked "to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own detriment." *Crouse v. Cyclops Indus.,* 560 Pa. 394, 402, 745 A.2d 606, 610 (2000). "Where there is no enforceable agreement between the parties because the agreement is not supported by consideration," *Crouse*, 560 Pa. at 610, "[p]romissory estoppel provides an equitable remedy to enforce a 'contract-like promise.'" *Cornell Narbeth, LLC v. Borough of Narbert*, 167 A.3d 228, 239 (Pa. Commw. Ct. 2017.).

"In order to maintain an action in promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." *Crouse*, 745 A.2d at 610; *Carlson v. Arnot-Ogden Memorial Hosp.*, 918 F.3d 411, 416 (3d Cir. 1990) (citing *Carmore v. Univ. of Pittsburgh*, 384 A.2d 1228, 1233 (Pa. Super. Ct. 1978)).

For the first element, "plaintiff must plead facts to show the existence of an express promise." *C & K Petroleum Prods. V. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988) ("Promissory estoppel would be rendered meaningless if… detrimental reliance [was] based on the alleged

existence of [] a broad and vague implied promise.") (citation omitted); *Rapid Circuits, Inc. v. Sun Nat'l Bank*, No. 10-6401, 2011 WL 1666919, *18 (E.D. Pa. May 3, 2011).

Here, although Plaintiff's complaint leaves much to be desired, I find that it contains marginally sufficient allegations to sustain Plaintiff's promissory estoppel claim. At the 12(b)(6) stage, I "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.,* 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). I must therefore accept as true Plaintiff's allegations that she relied, to her detriment, on the promises of her supervisor and clinical director at Temple to "fairly evaluate her academic performance." Compl. ¶ ¶5, 18. Although Plaintiff should have provided more clarity with respect to the express promise(s) she relied on, she offers the following allegations to support her claims that Temple promised—and failed—to evaluate her academic performance: Plaintiff was "never evaluated by her advisor at Temple [] Hospital," *Id.* ¶13, evaluations of her performance were not conducted by a member of the Temple faculty, *Id.* ¶22, and she relied on the promise that her performance would be evaluated after the completion of the Clinical Practicum, as outlined in the handbook, which reads "[a]fter each student's clinical experience is completed, the Director of Clinical Education and the Center Coordinator of Clinical Education evaluate the affiliation and consider suggestions for improvement." *Id.* ¶29; Exhibit B, ¶10(c). As to detrimental reliance, Plaintiff pleads that she paid $100,000 over the course of her studies in reliance on the promises discussed above to secure a doctorate in Physical Therapy. Compl. ¶4.

The cases on which Defendant relies are distinguishable, In *David v. Neumann Univ.*, 177 F. Supp 3d 920, 925 (E.D. Pa 2016), the court dismissed Plaintiff's promissory estoppel claim on the ground that Plaintiff alleged only that Defendants "violat[ed] promises and representations to

plaintiff concerning her course of studies upon which she relied" and did not allege detrimental reliance. *Id.* at 926.  Here, in contrast, Plaintiff's allegations, though sparse, provide sufficient detail to state a claim, as she pleads both that Temple University violated a promise to evaluate her academic performance, and that she paid tuition in reliance on Defendant's promises. Similarly, in *DeJohn v. Temple Univ.*, No. 06-778, 2006 WL 2623274 at *6 (E.D. Pa. Sept. 11, 2006),  the court dismissed a promissory estoppel claim on the ground that a student's reliance on University publications discussing "freedom of inquiry and freedom of expression," "educational opportunities…without regard to [students'] status or station in life," and the ability of students to "tailor their programs to their own particular interests" were so "vague and oversweeping" that it was "difficult to imagine what sort of reliance they could [be] expected to induce."  Here, the promise to fairly evaluate a student is not so vague that a student would not rely on it.  In fact, it is commonly assumed  that educational institutions have a duty to fairly evaluate their students.

Temple is correct that there is ample authority for the proposition that courts should defer to the academic judgment of educational institutions.  That may well prove to be a compelling defense here, but not at this stage of the proceedings.

### IV.     Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be denied.  An appropriate Order follows.

 /s/ Gerald Austin McHugh<br>
United States District Judge